COMMERCIAL CREDIT CO. v. MR. and MRS. J. H. FARRAR.

Western Section. October 23, 1931.

Petition for Certiorari denied by Supreme Court, March 12, 1932.

Z. N. Estes, of Memphis, for appellant.

Hal. S. Buchanan, of Memphis, for appellee.

SENTER, J.   The complainant filed this bill against Mr. and Mrs. J. H. Farrar, as the defendants, seeking to repossess an automobile alleged to have been sold by the Automobile Sales Company on a conditional sale contract, which conditional sale contract and the notes executed by J. H. Farrar in the purchase of said automobile had been duly and regularly transferred and assigned and sold to the complainant for a valuable consideration, and that complainant was the innocent purchaser and holder of said notes and the conditional sale contract.   The bill alleged in substance that J. H. Farrar executed a conditional sales contract to the Automobile Sales Company securing payment of the purchase money note amounting to the sum of $1020, executed by J. H. Farrar to the Automobile Sales Company, and payable in four equal installments of $255 each; that the first installment was due and payable on October 21, 1930, and there had been default in the payment of said note; that complainant became the holder in due course of trade of said promissory note and the assignee of said conditional sales contract on June 26, 1930, for good and sufficient consideration, without knowledge or notice of any defenses thereto.

The bill further alleges that there had been default on the part of defendant, J. H. Farrar in the payment of said note, "and when demand was to be made upon him his wife was found to be in possession of said automobile, and refused to make the payment which is past due as of October 21, as aforesaid."   It is further alleged that because of the default in the payment of the installment then past due that the Commercial Credit Company, the complainant, is entitled to the immediate possession of the car; that the defendants had unlawfully detained the possession of the car, and that complainant is entitled to the possession thereof because of the alleged default under the terms of the conditional sales contract.   The prayer of the bill is for a writ of replevin, and that at the hearing the possession of the car be awarded to complainant for the purpose of selling the same as provided by the laws of the State of Tennessee with reference to conditional sales contracts.   The bill prays for a judgment for the sum of $1,020, the amount of the note, together with reasonable attorneys fees, which is provided in the face of the note, and prays that the amount realized from the sale be applied to the judgment, and prays for general relief.

At the time the bill was filed, J. H. Farrar was dead, he having died on September 22, 1930, and the bill was filed October 27, 1930. Service of process was acknowledged by the attorney for Mrs. J. H. Farrar, and she answered the bill. No further steps were taken by complainant with reference to J. H. Farrar, or his personal representative, and the suit proceeded as litigation between complainant and the defendant, Mrs. J. H. Farrar, without revivor or amendment as to J. H. Farrar.

By her answer, Mrs. J. H. Farrar denied that the automobile in question belonged to her husband at any time, and denied that he was ever the owner of the automobile, and alleged that the automobile had been presented to her by her husband at the time it was purchased by him originally from the Automobile Sales Company and delivered to her possession, and that she had been in possession of the same ever since; that she had never at any time authorized him to sell the automobile to the Automobile Sales Company and then to repurchase same; that she had no knowledge of any such transaction, and if such transaction was made it was without her knowledge or consent. In her answer she states that in the summer of 1929 the Pierce-Arrow limousine (the automobile in question) was purchased for $4500, and a second-hand Pierce-Arrow belonging to her was traded in on the deal for $1500; that immediately after its purchase it was driven up to her place of residence, where defendant and her husband were then living, when her said husband then made a present to her of the car. She avers that her only knowledge of that transaction was that her car had been traded in on the purchase of the new car for $1500, and that she immediately took possession of the new car and has used it as her own ever since its purchase, and that the automobile was registered in her name on January 16, 1930. She further alleged that in June, 1930, the automobile belonged to her and that she did not give or consent to the giving, or have any knowledge of or in any way participate in giving a conditional sales contract to the Automobile Sales Company, or to any other company, conveying title to the said Pierce-Arrow.

From the uncontroverted evidence in the record it appears that several years ago Mrs. J. H. Farrar had won a Maxwell automobile in a contest of some character conducted by the Commercial Appeal Publishing Company; that some time later her husband traded the Maxwell car for another automobile and paid the difference himself. The same transaction occurred several times, and it does not appear that J. H. Farrar procured the express consent of his wife to trade in the old cars for new ones, but it does appear that in each instance the cars so traded for were registered from year to year in the name of Mrs. J. H. Farrar, but that J. H. Farrar always paid the difference

between the old cars and the new cars himself, and executed conditional sales contracts covering the payments. In this way the old Pierce-Arrow automobile was acquired, and on June 7, 1929, J. H. Farrar traded the old Pierce-Arrow to the Automobile Sales Company, the exclusive dealer for the Pierce-Arrow automobile in Memphis, and in the trade the old Pierce-Arrow was valued at $1500. The purchase price of the new Pierce-Arrow, the automobile involved in this litigation, was $4560, and J. H. Farrar executed notes for the difference. He signed these notes and also the conditional sale contract executed by him at the time of the purchase. His wife did not sign the notes or the conditional sale contract. J. H. Farrar paid these installment notes as they became due and payable.

At the time this purchase was made J. H. Farrar was a successful business man in Memphis, engaged in the cotton business, and lived at the Claridge Hotel, with his wife. Soon thereafter, J. H. Farrar suffered financial reverses and on June 21, 1930, he desired to raise some money on this automobile, and went to the Automobile Sales Company and requested a loan on the automobile. The automobile company, according to the preponderance of the evidence, declined to make a loan, or rather an outright loan to J. H. Farrar on the automobile, but agreed to purchase the automobile from Farrar for the sum of $850, and it was further agreed that they would sell the automobile back to Farrar for $1020, which would include certain carrying charges, etc. This resulted in J. H. Farrar executing to the Automobile Sales Company a bill of sale to the Pierce-Arrow automobile, and the Automobile Sales Company gave to him a check, payable to himself, for the $850, which J. H. Farrar used for his own purposes. J. H. Farrar then executed his notes to the Automobile Sales Company for the $1020 in buying back the automobile, and at the same time executed a conditional sales contract, in which the title to the automobile was retained by the seller as security for the payment of the notes. At the time of this transaction J. H. Farrar signed a statement, sworn to by him, in the form of an affidavit, by which he stated that he was the owner of the automobile, and that no conditional sale contract or other encumbrance was then against the car. The automobile was then insured in the name of J. H. Farrar as the owner; the Automobile Sales Company sold the installment note executed by J. H. Farrar to the complainant for a sufficient valuable consideration and before maturity, and at the same time transferred and assigned to complainant the conditional sales contract. It does not appear that the Automobile Sales Company or the complainant ever had any notice or information that this automobile had been presented by J. H. Farrar to his wife, or that she made any claim to the ownership of the automobile. At the time the Automobile Sales Company took the bill of sale from J.

H. Farrar and resold the car to him, it did not make any inquiry of the county court clerk, or the State authorities, to find in whose name the automobile had been registered. The Automobile Sales Company never had any transactions with reference to either of the automobiles with Mrs. J. H. Farrar. It also appears that J. H. Farrar paid all repair bills for the repair of this automobile and the expenses of maintaining it, and these repair bills were paid by him to the Automobile Sales Company. He also employed a chauffeur. He used the automobile at times for his own pleasure and convenience.

There is little or no conflict in the evidence as to the above facts. It also appears that after J. H. Farrar suffered financial losses, that it materially affected his health, and rendered him almost an invalid. He left no estate at his death.

There is contained in the record a finding of the facts as found by the Chancellor and an opinion by the Chancellor. In addition to finding the above facts, the Chancellor also found that by a preponderance of the evidence J. H. Farrar at the time he purchased the automobile in question, traded in his wife's old car at the trade-in price of $1500, and executed the notes and paid the cash for the difference, and that when he bought the automobile he had it driven to the Claridge Hotel where he and his wife were then living, and announced to her that he had bought the car for her as a wedding anniversary present, and then presented the car to her, and that this gift was complete, but subject to the notes which he had executed and secured by a conditional sales contract on the car; that these notes had been fully paid and discharged by J. H. Farrar at the time he sought and obtained the loan on the automobile, or sold it to the Automobile Sales Company for $850 and repurchased it for $1020 on the conditional sales contract and the notes made the basis for the replevin of the car.

The Chancellor further found and held that when those notes were paid the title of the automobile was then absolute in the wife, and it became her property unencumbered.

Under these facts the Chancellor held and so decreed that although Mrs. J. H. Farrar was the owner of the automobile at the time her husband negotiated the transaction by which he received $850, and also that under the Married Woman's Emancipation Act the husband did not have any rights in the automobile, or any right to dispose of the same without his wife's consent, or to encumber it without his wife's consent, yet, that under all the facts and circumstances as disclosed by the record he had the implied authority as her agent to sell the automobile and to repurchase same and to encumber it by a conditional sales contract. This conclusion was reached by the learned Chancellor on the theory that by the conduct of the wife

she had clothed the husband with indicia of ownership of the automobile. We quote from the Chancellor's opinion as follows:

"But notwithstanding this conclusion that this automobile belonged to Mrs. Farrar and that Mr. Farrar did not have the right to reduce it to possession and to appropriate it to his own use; nevertheless, I think the decree must go to complainant upon the theory that he had the implied authority as her agent to sell it. As between them it was undoubtedly hers, but it is apparent that he exercised general authority over it with her consent; he employed the chauffeur and paid all the repair bills; he used it for his business and pleasure; he was clothed with the general indicia of ownership; the mere fact that he borrowed money on the car implies that he had the authority to do so, for otherwise he was guilty of a gross and palpable fraud. He is shown to have enjoyed a good reputation in business circules, and it is hardly believable that he would have perpetrated a fraud upon the Automobile Sales Company in order to obtain a loan of $850.

"But even granting for the sake of argument that he did perpetrate a fraud upon the Automobile Sales Company, the complainant is still entitled to a decree, because the defendant made it possible for him to perpetrate the fraud by clothing him with the indicia of ownership.

"It is a case in which the maxim is applicable, that where one of two innocent persons must suffer by reason of the fraud of a third person, that one by whose act or conduct the third person was enabled to perpetrate the fraud, must bear the loss."

This holding was the basis for sustaining the bill for the replevin of the car, and the relief was limited to that alone, or rather that the complainant was entitled to maintain the replevin suit as the legal process by which to obtain possession, or repossessing the car to be sold under the conditional sales law, and the proceeds to be applied to the installment note.

This holding and decree of the Chancellor is challenged by appellant, Mrs. J. H. Farrar, by the several assignments of error. It is the contention of appellant under the assignments of error that the Chancellor having found the facts to be that Mrs. J. H. Farrar was the owner of the automobile, his holding that her husband had the implied authority as her agent to sell it, was erroneous, and especially in view of the pleadings. It being the further contention of appellant that the original bill filed by complainant did not proceed upon the theory that in negotiating the sale of the automobile J. H. Farrar was acting as the agent of his wife; but, that the bill proceeds upon the theory that J. H. Farrar was the owner of the automobile, and in making the sale of the same, and in executing the conditional sale contract for its repurchase, was acting for him-

self. It is the further contention of appellant under the assignments of error that Mrs. J. H. Farrar did not by any act of hers, clothe J. H. Farrar with indicia of ownership so as to estop her from asserting her rights to the automobile; that the mere fact that her husband paid the repair bills and sometimes used the automobile for his own pleasure was not such an indicia of ownership as to warrant the Automobile Sales Company in concluding that he was the owner of the automobile. It being further contended by appellant that the Automobile Sales Company and the complainant could readily have ascertained the true ownership of the automobile by the exercise of ordinary diligence by inquiring of the county court clerk as to in whose name the automobile was registered.

We are of the opinion that the question of principal and agent is not presented by the pleadings. At no time did the complainant contend, either in the pleadings or by its proof, that J. H. Farrar was the agent of and acting for his wife in negotiating the sale and then buying back the automobile and executing the conditional sales contract. J. H. Farrar did not represent himself to the Automobile Sales Company in any of the transactions as being the agent of his wife. In all the transactions that he had with the Automobile Sales Company he dealt as the owner, and even signed a sworn statement at the time he sold the car back to the Automobile Sales Company in which he claimed to be the owner of the automobile. He did not sign his wife's name to any of the papers, but only signed his own name. We cannot, therefore, agree to the holding by the Chancellor that J. H. Farrar, in these transactions, was acting as the agent, or implied agent of Mrs. J. H. Farrar.

We think one of the most potent facts disclosed by the record is that in selling or trading in the several different automobiles belonging to the wife, J. H. Farrar never procured the wife's consent so far as disclosed by this record. He assumed the authority to trade in these automobiles and to pay the difference. He traded them in as his own, and executed conditional sales contracts in his own name to secure the difference in the purchase price. At the time he purchased the new Pierce-Arrow car he traded the old Pierce-Arrow, which was also registered in his wife's name, at the tradein price of $1500. According to the evidence of Mrs. J. H. Farrar and her own testimony, he did not consult her about making the trade. He assumed the authority to make the trade, and encumbered the new automobile with the conditional sales contract. He informed her at the time that he had traded the old car in at $1500 in the purchase of the new car. She did not make any complaint of his action and conduct in so treating her property, but acquiesced in the transaction. She did not know whether he had paid the difference in cash or whether the new car presented to her was encumbered by

the difference in price. She was satisfied to rely upon his judgment, and did not even inquire of him if he had executed a conditional sale contract securing the difference in price of the old and new car. She simply acquiesced in the transaction. This seems to have been the course pursued in trading in the other automobiles. When we consider these facts in connection with the further facts that he paid all the expenses incident to the operation of the automobile from the time he purchased it until the time he executed the bill of sale, including repair bills paid by him on the car to the Automobile Sales Company, who had sold him the car, and that he used the car, and apparently treated it as his own, coupled with the further very potent fact that he made an affidavit in which he stated that he was the owner of the car at the time that he executed the bill of sale, and that he at that time sustained an excellent reputation for integrity, we cannot escape the conclusion that Mrs. J. H. Farrar was at all times ready to acquiesce in his dealings with reference to the automobile, just as she had acquiesced in his dealings with the other automobiles registered in her name and which he had disposed of by trading them in and executing conditional sales contracts to secure the difference in the purchase price. He even insured the automobile in his own name against fire and theft, etc. It is true that the record does not disclose that his wife knew that he had so insured the automobile. However, the fact that he did so insure it would indicate that he considered the car as his property, else the insurance would have been void. The evidence in this record is not very conclusive and convincing that he ever intended to make his wife a present of this automobile in the sense that he would be denuded as a matter of law of any rights or authority in or over the automobile. It is true that he had stated to certain witnesses who testified in the record that he bought the automobile as an anniversary wedding present for his wife, and it is also shown that he on two or three occasions referred to the automobile as his wife's car in the same way and manner that he treated the former cars which he had purchased, beginning with the first car, the Maxwell, which his wife won in the newspaper contest. But he continued to exercise the rights of ownership over these other cars. It is not shown definitely the year that his wife won the Maxwell car in the newspaper contest, but it was several years ago, and since he had owned, or they had owned several automobiles in the meantime and after using them for the usual time traded them in, it may be that the Maxwell car was acquired by his wife before the Married Woman's Emancipation Act which took effect January 1, 1914. However this may be, he treated all the other automobiles as his own insofar as exercising the right to trade them in or to sell them, and it does not

appear that his wife ever made any question with reference to his authority to so deal with them. While it is true that the Married Woman's Emancipation Act gives to her the right to own and control her own property and free from any rights therein of the husband, however, we cannot lose sight of the fact that the very relation of husband and wife would warrant the husband in taking more liberties with his wife's property than with the property of strangers. It does not require so convincing evidence that in so doing he is acting upon the implied consent of the wife, or more properly, the wife's acquiescence of consent would be more readily inferred or implied.

Certainly there is nothing in the entire record to warrant a conclusion that the Automobile Sales Company, or complainant, were in possession of any facts to put them upon inquiry as to the right of the husband to sell this automobile to the sales company that had sold it to him and to repurchase the same on credit terms. He had so acted in all other transactions with this same sales company, and in all the documents that he had executed and signed he did so as the owner or as the purchaser. The mere fact that the automobile was registered in the wife's name only gives constructive notice of the true ownership. It is true that if the Automobile Sales Company had made the inquiry to the authorities it could have been discovered that the automobile was registered in her name, and in which event the wife no doubt would have been required to have either signed a release or to have joined in the papers. If there had been no other transactions between the parties the failure to inquire of the county court clerk as to the registration of the automobile would have been negligence upon the part of the Automobile Sales Company and the complainant. Because of the other transactions pertaining to the same automobile and the knowledge with the sales company that the automobile had originally been sold to J. II. Farrar and that he had executed the conditional sales note and contract, and had paid the same, and had used and treated the car as his own, these facts, we think, would excuse the Automobile Sales Company from inquiring as to whose name the car was registered in.

We are therefore of the opinion that under all the facts and circumstances as disclosed by the record the husband was clothed with all indicia of ownership, except that the automobile was registered in his wife's name. She had so clothed him, not alone by permitting him to use the automobile at all times for his own business or pleasure, but by paying all repair bills and upkeep of the car, and by having traded in the other automobiles which had been registered in her name without procuring her consent, as to operate as an equitable estoppel to assert her ownership over the claim of the complainant. Under all the facts and circumstances we are of the opinion

that by her own conduct she should not now be permitted to assert her rights in the automobile as prior to the rights of complainant, who is the innocent holder and purchaser of these notes and the conditional sales contract, evidently executed by the husband in the utmost good faith. Mrs. J. H. Farrar admits on cross-examination that she does not believe that her husband would have intentionally practiced a fraud upon the Automobile Sales Company to procure the loan.

In this view of the case we are of the opinion that the Chancellor by his decree reached the correct result, and that the decree should be affirmed.

Appellant will pay the cost of this appeal, she having appealed in forma pauperis.

Heiskell and Owen, JJ., concur.